IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ULTIMATE LIVING INTERNATIONAL, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § | 3:05-CV-01745-M |
| | § | |
| MIRACLE GREENS, INC., d/b/a FIT FOR YOU INTERNATIONAL, | § § § | |
| Defendant. | § § | |

**PLAINTIFF ULTIMATE LIVING INTERNATIONAL'S
BRIEF IN SUPPORT OF ITS MOTION FOR AN ORDER TO SHOW CAUSE**

Jerry K. Clements
State Bar No. 20888200
Charles E. Phipps
State Bar No. 00794457
M. Scott Fuller
State Bar No. 24036607
LOCKE LIDDELL & SAPP PLLC
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone: (214) 740-8000
Telecopy: (214) 740-8800
jclements@lockeliddell.com
cphipps@lockeliddell.com
sfuller@lockeliddell.com

**ATTORNEYS FOR PLAINTIFF ULTIMATE
LIVING INTERNATIONAL, INC.**

## **TABLE OF CONTENTS**

Table of Authorities ...............................................................................................................ii

I.   Statement of Material Facts ........................................................................................1

II.  Defendant is in Civil Contempt of This Court's Injunction ..............................................5

     A.   A Valid Order Was in Effect Against Defendant MacroLife................................6
     B.   The Injunction Required certain Conduct of Defendant MacroLife......................6
     C.   MacroLife's Failure to Comply With the Injunction is Willful and Blatant...........7
     D.   MacroLife Should be Enjoined From All Use of the Word "Miracle".................10

II.  Conclusion and Prayer.........................................................................................11

## **TABLE OF AUTHORITIES**

*Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*,
    659 F.2d 695 (5th Cir. 1981) ............................................................................................... 11

*Conan Properties, Inc. v. Conans Pizza, Inc.*,
    752 F.2d 145 (5th Cir. 1985) ............................................................................................... 11

*Eskay Drugs, Inc. v. Smith, Kline & French Labs.*,
    188 F.2d 430 (5th Cir. 1951) ............................................................................................... 11

*Mendoza v. Regis Corp.*,
    2005 WL 1109262 (W.D. Tex. 2005) .................................................................................. 5

*Sunbeam Products, Inc. v. The West Bend Co.*,
    123 F.3d 246 (5th Cir. 1997) ......................................................................................... 10, 11

*Virgin Mobile USA, LLC v. World MPP Inc.*
    2007 WL 294145 (S.D. Tex. 2007) ...................................................................................... 5

DALLAS: 590820.00005: 1618066v1

Plaintiff Ultimate Living International, Inc. ("Ultimate Living") respectfully files this Brief in Support of its Motion for an Order requiring Defendant Miracle Greens, Inc. d/b/a Fit For You International to appear and show cause why it should not be held in contempt of this Court's Order and Injunction [Document 81].

**I.   STATEMENT OF MATERIAL FACTS**

1. Plaintiff Ultimate Living filed an action in this Court on August 29, 2005 complaining of Defendant Miracle Greens, Inc. d/b/a Fit For You International [Docket No. 1]. The Complaint alleged that the Defendant was infringing upon the registered federal trademark of Ultimate Living for the mark GREEN MIRACLE, by manufacturing and marketing an identical product under the MIRACLE GREENS mark.

2. Following the filing of the original Complaint by Ultimate Living, the parties reached a settlement agreement memorialized in the filing of the Joint Motion for Entry of an Injunction and Order against Defendant on February 1, 2007 [Docket No. 80]. This Court granted the Joint Motion [Docket No. 81] and thereafter entered Judgment [Docket No. 84] dismissing the case with prejudice, subject to the Agreed Order and Injunction.

3. As part of this Court's Judgment, the Court expressly retained jurisdiction over the parties for the purposes of enforcement of the Agreed Order and Injunction [Docket No. 81] and of the Settlement Agreement dated January 29, 2007.

4. The Agreed Order and Injunction ("Injunction") commanded the Defendant "and its subsidiaries, affiliated companies, agents and distributors, and all those acting in concert or participation with" the Defendant, to, *inter alia*:

> a.   "phase out all use of the mark MIRACLE GREENS as a trademark, service mark, brand name, corporate name and/or trade name" by not later than July 28, 2007 [Docket No. 81 at para. 1];

b.  be enjoined from "any future use of any trademark, service mark, brand name, corporate name and/or trade name in association with any product or service that contains the term MIRACLE GREENS or any confusingly similar trademarks" [*Id.* at para. 2];

c.  "adopt a new corporate name [by not later than May 29, 2007], cease all use of the corporate name 'Miracle Greens, Inc.' thereafter, and adopt a new corporate name that shall not include the word 'MIRACLE'" [*Id.* at para. 3];

d.  be enjoined from "any future use of the marks MIRACLE GREENS or GREEN MIRACLE marks in any manner, including advertising, marketing, selling or rendering any product or service or otherwise using or continuing to use such marks for any purpose" [*Id.* at para. 4];

e.  be enjoined from "making any representation to any person or entity that it/they have authority to use the GREEN MIRACLE or MIRACLE GREENS mark or any mark which is confusingly similar with the GREEN MIRACLE mark, including but not limited to the MIRACLE GREENS mark" [*Id.* at para. 5];

f.  "use its best efforts to secure and ensure compliance with this Order and Injunction by all of The Fit For You Entities" [*Id.* at para. 12].

5.  On April 4, 2007, counsel for Ultimate Living delivered a letter to counsel for Defendant in which the Defendant was reminded of the deadlines contained in the Injunction. A copy of the April 4 letter is attached as Exhibit A [A01 to A017]. Counsel for Defendant did not object to the content of the April 4 letter, but counsel for Defendant of the firm Akin Gump Strauss Hauer & Feld LLP did inform counsel for Ultimate Living via voicemail that Akin Gump no longer represented the Defendant in connection with this matter. Counsel at Akin Gump further informed counsel for Ultimate Living that it was unsure of the identity of the firm (if any) currently representing the Defendant.

6.  On May 31, 2007, counsel for Ultimate Living delivered an electronic mail message to Ms. Sylvia Ortiz, the CEO of Defendant Miracle Greens, Inc. A copy of the May 31 electronic mail is attached as Exhibit B [A018 to A020]. The message conveyed Plaintiff's

2

concerns at that time regarding the failure of Defendant to fully and timely comply with the provisions of this Court's Injunction and, more specifically, the requirements that the Defendant transfer ownership and control of a certain domain name [per Docket No. 81 at para. 11], and that Defendant adopt a new corporate identity by not later than May 29, 2007 [per Docket No. 81 at para. 3].

7. Ultimate Living is informed and believes that Defendant Miracle Greens, Inc. filed an Amendment to its California Articles of Incorporation on or about May 1, 2007, in which the corporate entity was renamed MACROLIFE NATURALS, INC. A copy of the Certificate of Amendment (as received from Sylvia Ortiz on June 1, 2007) is attached as Exhibit C [A21 to A23].

8. Despite the filing of the Certificate of Amendment, Defendant nevertheless maintained its Internet website in a manner such that the former company name (MIRACLE GREENS, INC.) was prominent, thereby giving the impression that the Defendant and its products remained affiliated with that corporate identity. On June 19, 2007, counsel for Ultimate Living again delivered an electronic mail message to Ms. Sylvia Ortiz relaying the concerns of Plaintiff regarding Defendant's ongoing non-compliance with this Court's Injunction. A copy of the June 19 electronic mail is attached as Exhibit D [A24 to A26].

9. On June 21, 2007, counsel for Ultimate Living delivered yet another electronic mail message to Ms. Sylvia Ortiz in which Defendant's failure to take positive steps towards the required phase-out of the MIRACLE GREENS mark was raised as a concern. A copy of the June 21 electronic mail is attached as Exhibit E [A27 to A32]. The message further reminded Defendant of its obligation to use its best efforts to ensure compliance with this Court's injunction by all of its affiliated companies, agents, and distributors.

3

10. On or about August 1, 2007, Plaintiff Ultimate Living received a certain publication distributed by Threshold Enterprises, Ltd. entitled: "Threshold News & Products – August 2007." A copy of the cover of that publication, along with a page therefrom containing Defendant's advertisement, are attached as Exhibit F [A33 to A35].

11. The advertisement of Defendant contained in the referenced Threshold catalog generally heralds the change in the name of Defendant's product from MIRACLE GREENS to MACRO GREENS, and further proclaims that the newly-named product contains "the ORIGINAL MIRACULOUS FORMULA!"  *See* Exhibit F [A35].  Still further, the advertisement conjures up the name MIRACLE GREENS, INC., along with the domain name at MIRACLEGREENS.COM. Finally, the bottom of the advertisement reflects what is understood to represent the product code, as: MIRACLE GREENS 10 OZ. – GR0002. *Id.*

12. The Threshold catalog containing Defendant's advertisement bears an August 2007 publication and distribution date.  *Id.* [at A34].

13. As of August 13, 2007, an Internet Google search for the term "miracle greens" returns millions of "hits."  A true and correct copy of the first results pages from such search is attached as Exhibit 1 to the Declaration of M. Scott Fuller [attached as Exhibit G] [A39 to A43]. The Google search results reflect the continued use of the MIRACLE GREENS mark by numerous distributors of Defendant's products and, in fact, the results include a direct link to Defendant's current website at www.macrolifenaturals.com. Further, the "Welcome" page of Defendant's current website includes a reference to the product "formerly MIRACLE GREENS" (*see* Exhibit 2 of Exhibit G) [A44 to A46].

14. Plaintiff Ultimate Living is further aware of at least one distributor who (as of August 13, 2007) still advertises Defendant's product under the MIRACLE GREENS mark and

4

offers products bearing that mark for sale in commerce. A copy of the referenced advertisement, found at www.atomicnutrition.com, is attached as Exhibit 3 to Exhibit G [A47 to A49]. All of the descriptive text accompanying the offer for sale references the product as MIRACLE GREENS.

## II. DEFENDANT IS IN CIVIL CONTEMPT OF THIS COURT'S INJUNCTION

Defendant MacroLife Naturals, Inc. (formerly known as Miracle Greens, Inc. d/b/a Fit For You International) (hereafter, "MacroLife") is in civil contempt of this Court's Injunction. It is settled law in this Circuit that "[a] party moving for civil contempt must demonstrate by clear and convincing evidence: (1) that a valid court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order. In the civil contempt context, clear and convincing evidence requires proof so clear, direct, weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Virgin Mobile USA, LLC v. World MPP Inc.,* 2007 WL 294145 at *2 (S.D. Tex. 2007) (slip copy) (internal citations omitted).

When an injunction order precludes a party from further use of a given trademark, the party held in contempt of such order is subject to an accounting of its profits to the moving party as provided in 15 U.S.C. § 1117 or, alternatively, on the basis of unjust enrichment. *Mendoza v. Regis Corp.,* 2005 WL 1109262 at *1-4 (W.D. Tex. 2005) (unreported) (citing cases). Moreover, profits or damages may be multiplied in a case of a willful and blatant contempt. *Id.* *3. As will be shown *infra*, MacroLife is in civil contempt of at least paragraphs 1, 2, 3, 4, 5, and 12 of this Court's Injunction.

### A. A Valid Order Was In Effect Against Defendant MacroLife

There can be no dispute concerning the validity of this Court's Injunction against Defendant MacroLife and its predecessor-in-interest Miracle Greens, Inc. d/b/a Fit For You International. *See* Docket Nos. 80, 81 and 84. The Injunction against MacroLife was agreed to and filed jointly by the parties, bearing the signature of counsel of behalf of both Ultimate Living and Miracle Greens, Inc. d/b/a Fit For You International. *See* Docket No. 80. Further, the Order of this Court is directed towards the Defendant Miracle Greens, Inc. d/b/a Fit For You International [Docket No. 81], and commands the Defendant to comply with the specific provisions in the Injunction. This Court expressly retained jurisdiction over the parties for the purposes of enforcement of the Agreed Order and Injunction and of the Settlement Agreement dated January 29, 2007. *See* Docket No. 81 at para. 13 and Docket No. 84. Defendant MacroLife is the successor-in-interest of Defendant Miracle Greens, Inc. [*see* A22-23] and is subject to all terms of the Injunction.

### B. The Injunction Required Certain Conduct Of Defendant MacroLife

As set forth *supra*, this Court's Order of Injunction required certain very specific (and agreed upon) conduct on the part of Defendant MacroLife. More specifically, the Injunction required MacroLife to, *inter alia*: (i) phase out all use of the MIRACLE GREENS mark by not later than July 28, 2007; (ii) cease all future use of any mark associated with any product containing the term MIRACLE GREENS; (iii) adopt a new corporate name and cease all use of the former corporate name "Miracle Greens, Inc." by not later than May 29, 2007; (iv) cease all future use of the mark MIRACLE GREENS in any manner whatsoever, including advertising, marketing, selling or rendering any product or service or otherwise using the mark for any purpose; (v) cease all representation that it has the authority to use the MIRACLE GREENS

6

mark; and (vi) use its best efforts to secure compliance with the foregoing by all of its subsidiaries, affiliated companies, agents and distributors, and all those acting in concert or participation with it. *See* Docket No. 81.

### C. MacroLife's Failure To Comply With The Injunction Is Willful and Blatant

There is no doubt regarding the failure of MacroLife to comply with the provisions of this Court's Injunction. Not only did MacroLife cause its contemptuous advertisement to be published and widely distributed via the Threshold catalog well after the cutoff date(s), it has maintained its own Internet website in such a blatant manner that the provisions of the Injunction are violated, as well. Moreover, the sheer number of independent distributors still using the MIRACLE GREENS mark in their respective advertisements leaves little doubt that MacroLife has failed to exercise its best efforts to ensure compliance by those third party entities with the terms of the Injunction. In fact, as evidenced by the "atomic nutrition" advertisement [A48-49], at best MacroLife did not even begin its phase-out efforts until late in the eleventh hour. The Injunction was specifically negotiated and agreed upon, and provided a period of fully <u>six months</u> for MacroLife to "phase out all use of the mark MIRACLE GREENS as a trademark, service mark, brand name, corporate name and/or trade name." [Docket No. 81 at para. 1]. The "phase out" period was agreed and intended as a reasonable period for MacroLife to fully dispose of its inventoried products bearing the MIRACLE GREENS mark. The fact that the MIRACLE GREENS mark still abounds in cyberspace testifies to the bad faith and slow-footedness of MacroLife's "efforts" to comply with this Court's Injunction.

The MacroLife advertisement appearing in the Threshold catalog (*see* A34-35) violates at least paragraphs 1, 2, 3, 4, 5, and 12 of the Injunction. The advertisement undeniably uses the MIRACLE GREENS mark in commerce in connection with the promotion of MacroLife goods.

7

Moreover, the advertisement not only clearly uses the "Miracle Greens, Inc." corporate name in connection with the promotion of MacroLife goods, it further represents authority on the part of MacroLife to use both the MIRACLE GREENS mark and corporate name in commerce. Because the Threshold catalog was not published until August 2007, the actions undertaken on the part of MacroLife to violate the terms of the Injunction are clearly willful and blatant. The actions on the part of MacroLife evidence bad faith on its part in seeking to comply with the Order of this Court, and an abysmal failure on its part to use its "best efforts" to ensure compliance.

The current MacroLife Internet web page also violates at least paragraphs 1, 2, 4 and 5 of the Injunction, as it references the current MacroLife "greens" product as being "formerly MIRACLE GREENS." *See* A45-46. The Injunction specifically precludes such use of the MIRACLE GREENS mark [*e.g.,* Docket No. 81 at paras. 4 and 5], and MacroLife's actions in placing the statement on its web page are therefore a willful and blatant violation of the Injunction.

The "atomicnutrition" web page also violates at least paragraphs 1, 2, 4, 5, and 12 of the Injunction, as it uses the MIRACLE GREENS mark and represents the authority on the part of MacroLife to continue to use that mark in commerce. The advertisement indicates that even as of today, August 13, 2007, customers may still receive product with the old label bearing the infringing MIRACLE GREENS mark. *See* A48-49. As evidenced by the statement concerning the name change from MIRACLE GREENS to MACRO GREENS, Defendant MacroLife did not even inform its distributors of the phase-out until at least July 2007. That "notice" is clearly insufficient to ensure compliance with the Injunction, and MacroLife evidently made no effort to

8

preclude the continued use of the MIRACLE GREENS mark after July 28, 2007 by any distributor.

Finally, as evidenced by the Google search engine results for the term "Miracle Greens," to this day there exist countless distributors who still use the MIRACLE GREENS mark in commerce in advertising and promoting the products of Defendant MacroLife. *See* A40-43. In view of the sheer number of such offending uses, it is reasonable to conclude that MacroLife has failed to exercise its best efforts to ensure compliance by its subsidiaries, affiliated companies, agents and distributors, and all those acting in concert or participation with it, with the terms of the Injunction. At minimum, MacroLife should be ordered to show cause why it should not be held in contempt of this provision, by presenting evidence to this Court establishing its good faith efforts in this regard.

The failure on the part of MacroLife to fully comply with the terms of the Injunction is, unfortunately, not a surprise to Ultimate Living. This condition has been foreseen by Ultimate Living since shortly after entry of the Injunction, and Ultimate Living has repeatedly reminded MacroLife of its obligations under the Injunction since that time, all in an effort to promote compliance and avoid the necessity of involving this Court. *See* A01-20 and A24-32. Yet despite the efforts of Ultimate Living, MacroLife has preferred to drag its feet in complying (if at all) with the Injunction with what can only be described as, at best, a lack of urgency. MacroLife had fully six months (a period which it agreed was sufficient) during which it was to phase out all use of the MIRACLE GREENS mark and bring itself in full compliance with the Injunction. It simply has not done so, and Ultimate Living respectfully seeks an Order requiring MacroLife to show cause why Defendant should not now be held in contempt.

9

### D.     MacroLife Should Be Enjoined From All Use Of The Word "Miracle"

Defendant MacroLife is in violation of the very terms of the Injunction to which it agreed were reasonable. MacroLife and its countless distributors continue to use the MIRACLE GREENS mark and corporate identity in association with Defendant's products, and continue to represent authority to do so. Further, MacroLife has failed to utilize its best efforts (assuming it has utilized *any* efforts) to ensure compliance with the Injunction by its affiliates and distributors. Plaintiff Ultimate Living therefore continues to be damaged by Defendant's activities, in the face of and despite this Court's Injunction.

In view of the foregoing, it is only appropriate that MacroLife be further enjoined from all use of the terms "Miracle" and "Miraculous" in its advertising and trade names going forward. This additional remedy is necessary in this case, as it has become increasingly clear that MacroLife intends to push the envelope of "compliance" as far as it can by continuing to rely on any residual goodwill associated with its enjoined mark, MIRACLE GREENS, as well as the ongoing goodwill of Plaintiff Ultimate Living in its mark, GREEN MIRACLE. Defendant has largely ignored the deadlines set forth in the Injunction, and continues to act with disregard for the legal rights of Ultimate Living.

Trademark injunctions can be fashioned so as to extend well beyond the reach of the Lanham Act with respect to those who have violated the trademark rights of others; this is the so-called "Safe Distance Rule." The Safe Distance Rule is intended to foreclose the possibility (or, in this case, the reality) that those who have previously violated trademark rights may thereafter "seek to circumvent injunctions with subsequent modifications." *Sunbeam Products, Inc. v. The West Bend Co.,* 123 F.3d 246, 260 (5th Cir. 1997). Accordingly, those who have previously violated the trademark rights of another "should thereafter be required to keep a safe distance

away from the margin line – even if that requirement involves a handicap as compared to those who have not disqualified themselves." *Id.* Here, although MacroLife was not an adjudged infringer, the policy underlying the scope of the permanent injunction should be maintained. MacroLife simply should not be permitted to run roughshod over the trademark rights of Ultimate Living by continuing to use the terms "miracle" and "miraculous" in its advertising. *Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 154 (5th Cir. 1985) (injunction should take into account the possibility that the infringer "will modify his behavior ever so slightly and attempt to skirt the line of permissible conduct"); *Eskay Drugs, Inc. v. Smith, Kline & French Labs.,* 188 F.2d 430, 432 (5th Cir. 1951) ("[Infringers] must do more than see how close they can come with safety to that which they were enjoined from doing"); *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 705-06 (5th Cir. 1981) (injunction can be fashioned such that the infringer is not permitted to retain the goodwill associated with its infringing mark).

### III. CONCLUSION AND PRAYER

In view of the foregoing, Plaintiff Ultimate Living respectfully seeks an Order of this Court requiring Defendant MacroLife to present itself and show cause why it should not be held in contempt of this Court's Injunction and Judgment [Docket Nos. 81 and 84]. More specifically, Ultimate Living seeks an Order:

1. Requiring MacroLife to render an accounting of its profits for all sales of all products advertised using the MIRACLE GREENS mark after July 28, 2007, including but not limited to the product now known as MACRO GREENS;

11

2. Requiring MacroLife to answer discovery from Ultimate Living concerning its profits for all sales of all products advertised using the MIRACLE GREENS mark after July 28, 2007, including but not limited to the product now known as MACRO GREENS;

3. Requiring MacroLife to pay in damages to Ultimate Living an amount equal to its profits for all sales of all products advertised using the MIRACLE GREENS mark after July 28, 2007, including but not limited to the product now known as MACRO GREENS, including pre- and post-judgment interest thereon;

4. Requiring MacroLife to pay all attorney's fees and costs incurred by Ultimate Living in obtaining compliance with the Injunction on the part of MacroLife, including all such fees associated with the preparation and prosecution of this Motion to Show Cause;

5. Requiring MacroLife to pay enhanced damages to Ultimate Living as a result of MacroLife's willful and blatant non-compliance with the Injunction, in an amount equal to three times its profits or an amount to be determined by the Court;

6. Permanently enjoining MacroLife from all use of the term "Miracle" or of the term "Miraculous" in its advertising and in all trademarks and/or trade names associated with any MacroLife product;

7. Requiring MacroLife to immediately and fully comply with the terms of the Injunction and Judgment [Docket Nos. 81 and 84]; and

8. Granting all other such relief to which Ultimate Living is entitled.

| | |
|---|---|
| Dated: August 13, 2007 | Respectfully submitted, |

/s/ Charles E. Phipps
Jerry K. Clements
State Bar No. 20888200
Charles E. Phipps
State Bar No. 00794457
M. Scott Fuller
State Bar No. 24036607
LOCKE LIDDELL & SAPP PLLC
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 740-8000
Telecopy:  (214) 740-8800
jclements@lockeliddell.com
cphipps@lockeliddell.com
sfuller@lockeliddell.com

**ATTORNEYS FOR PLAINTIFF ULTIMATE LIVING INTERNATIONAL, INC.**