IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ULTIMATE LIVING INTERNATIONAL, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:05-CV-1745-M |
| MIRACLE GREENS SUPPLEMENTS, INC., d/b/a/ FIT FOR YOU INTERNATIONAL, | § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

In its Opinion of April 22, 2008, the Court found Defendant in contempt for violating an injunction, entered by the Court on February 2, 2007, and directed the parties to file a Joint Report on Plaintiff's claimed attorney's fees and costs.[1] Because the parties disagree on what sum constitutes a reasonable amount of attorney's fees, the Court resolves the issue under the principles set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

### I. STATEMENT OF FACTS

Plaintiff Ultimate Living, Inc. ("Ultimate Living") sells nutritional supplements under the registered trademark, GREEN MIRACLE. Ultimate Living sued Defendant, then called Miracle Greens Supplements, Inc. ("Miracle Greens"), and now called MacroLife Naturals, Inc. ("MacroLife"), over its marketing of a product under the mark MIRACLE GREENS. The parties reached a Settlement Agreement and submitted to the Court an Agreed Order and Injunction

---

[1] After filing their Joint Report, the parties entered a stipulation with respect to reimbursement of Plaintiff's costs, which was approved by the Magistrate Judge on July 1, 2008.

("Injunction"). The Court entered it without substantive modification on February 2, 2007. The Injunction required the Defendant and its distributors to phase out all use of the MIRACLE GREENS mark by July 28, 2007, and required Defendant to use its best efforts to ensure compliance with the Injunction by its affiliates, "The Fit For You Entities," which were designated as Defendant's "subsidiaries, affiliated companies, agents, and distributors, and all those acting in concert or participation with the Defendant." Defendant was also required to cease use of Miracle Greens, Inc. as its corporate name.

In August 2007, Plaintiff filed its Motion for Order to Show Cause ("Motion to Show Cause"), alleging that Defendant violated the Injunction. The Court conducted a hearing on Plaintiff's Motion on October 26, 2007, which was continued and concluded on February 1, 2008.

The Injunction required Defendant, its agents and distributors, and all those acting in concert or participation with Defendant, to phase out all use of the MIRACLE GREENS mark by July 28, 2007. As described in the Court's Order of April 22, 2008, Plaintiff proved that Defendant violated the phase-out requirement in two ways. First, a catalog advertisement purchased by Defendant in July of 2007, and published in the August 2007 issue of *Threshold Magazine*, announced that MIRACLE GREENS was now MACRO GREENS, identified Defendant's webpage as Miraclegreens.com, and included a reference to the product code, "Miracle Greens 10 oz. – GR0002." Second, after the phase-out deadline, Defendant's webpage referenced the MIRACLE GREENS mark.

The Injunction also required Defendant to use its best efforts to ensure its own, and its affiliates', compliance with the Injunction. The Court concluded that Defendant did not adequately appraise its affiliates of the Injunction. However, Plaintiff did not prevail on other

alleged violations of the phase-out and best efforts requirements of the Injunction as detailed in the April 22, 2008, Order.

As damages for Defendant's violation of the Injunction, Plaintiff sought further injunctive relief, lost profits, treble damages, attorney's fees, and costs. The Court determined to award Plaintiff reasonable attorney's fees and costs, but denied all other relief requested.

## II. ANALYSIS

Plaintiff submits that $125,132.50 constitutes its reasonable attorney's fees in this matter. For the reasons set forth below, the Court reduces Plaintiff's requested fee award.

### A. Methodology for calculation of attorney's fees

An award of attorney's fees and costs to the prevailing party in a civil contempt action is determined according to the "lodestar method." *Microsoft Corp. v. United Computer Res. of N.J., Inc.,* 216 F.Supp.2d 383, 387 (D.N.J. 2002). The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999); *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (per curiam). The fee applicant bears the burden of proof on this issue. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996); *Kellstrom*, 50 F.3d at 324. In the second step of the lodestar method, a court must consider whether the lodestar should be adjusted upward or downward depending on its analysis of the twelve factors established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 at 717-19.[2] Many of these factors are subsumed within the

---

[2] The twelve *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the

initial calculation of hours reasonably expended at a reasonable hourly rate, and should not be double-counted. *Jason D.W. v. Houston Ind. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted). The most critical factor in determining the reasonableness of an attorney's fee award is the degree of success obtained. *Hensley*, 461 U.S. at 436.

### B. Calculation of the lodestar

Plaintiff offers time records, affidavits, and other evidence in support of its claimed fees.

#### 1. Reasonable rate

A reasonable hourly rate is determined based on the prevailing market rate in the relevant legal community for similar services of lawyers of comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *League of United Latin Am. Citizens #4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). The applicant bears the burden of establishing by satisfactory evidence, such as affidavits and empirical data, the prevailing market rate. *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996). When an attorney's customary hourly rate is within the range of hourly fees in the prevailing market, that rate should be considered in setting a reasonable hourly rate. *Roscoe Indep. Sch. Dist.*, 119 F.3d at 1234; *Old Republican Ins. Co. v. Stafford*, No. 3:03-CV-1611, 2005 WL 2026853, at *3 (N.D. Tex. Aug. 22, 2005) (relying on the Texas Lawyer Survey in determining the prevailing market rate).

Here, three attorneys—Jerry K. Clements, Charles E. Phipps, and M. Scott Fuller of Locke Lord Bissell & Liddell ("Locke Lord")—represented Plaintiff in 2007 and 2008. Ms. Clements, a lawyer for more than twenty five years, is the Managing Partner of Locke Lord. Mr. Phipps has practiced for ten years and is a partner in the Intellectual Property section of Locke

---

nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

Lord. Mr. Fuller is a sixth year associate practicing in Locke Lord's Intellectual Property section. Plaintiff contends that the hourly rates charged by Locke Lord for their services in 2007 and 2008 were consistent with the hourly rates of attorneys with equivalent experience practicing at large law firms in Dallas, Texas. To support its contention, Plaintiff submitted two surveys of the Dallas legal market: the Texas Lawyer 2007 Billing Survey ("Texas Survey"), which reported the average billing rates of lawyers practicing at large law firms, defined as firms with 100 or more attorneys, and the PricewaterhouseCoopers 2007 Billing Rate & Associate Salary Survey ("PWC Survey"), which reported the billing rates of the largest law firms in Dallas.

In 2007, counsels' hourly rates were within, or below, the average rates reported in the Texas Survey and the PWC Survey for attorneys with equivalent experience practicing at large law firms in Dallas, Texas. In 2008, Mr. Fuller's hourly rate only slightly exceeded the average rate reported in both surveys for associates with equivalent experience at comparable law firms. Although Mr. Phipps and Ms. Clements' hourly rates in 2008 exceeded the average rates reported in the Texas and PWC Surveys, those surveys reflected the prevailing rates in 2007, not 2008. Counsels' 2008 rates were consistent with a projected growth in billing rates, based on historic trends. Between 2007 and 2008, counsels' rates grew only slightly faster than did those of attorneys with equivalent experience at comparable firms between 2006 and 2007.

Defendant concedes that the Texas Survey and the PWC Survey accurately reflect the average and/or median hourly rates for associates and partners practicing at large law firms in Dallas, Texas, and that counsels' hourly rates were consistent with those rates. However, Defendant maintains that counsels' rates were unreasonable, on three grounds: (1) courts have determined such rates to be excessive; (2) counsels' rates are not justified by the complexity of

the underlying action; and (3) between 2007 and 2008, counsels' rates grew by an excessive amount.

Defendant's first contention is that courts in this district have deemed hourly rates exceeding $400 to be excessive. Defendant relies on three decisions: *Richardson Independent School District v. Michael Z.,* No. 3:05-CV-535-M, 2008 WL 1805771 (N.D. Tex. Apr. 22, 2008) (Lynn, J.), *Giddy Up, LLC v. Prism Graphics, Inc.,* No. 3:06-CV-0948-B, 2008 WL 656504 (N.D. Tex. Mar. 12, 2008) (Boyle, J.), and *Heliflight, Inc. v. Bell/Agusta Aerospace Co., LLC,* No. 4:06-CV-425-A, 2007 WL 4373259 (N.D. Tex. Dec. 12, 2007) (McBryde, J.). However, because the fee applicants in those cases were not comparably situated to Plaintiff's counsel, those decisions are not determinative of the prevailing market rate here. In *Richardson*, the fee applicant was a solo practitioner representing a family on a special education matter—not a partner at a large law firm representing a corporation in a trademark dispute. *Richardson Indep. Sch. Dist.*, 2008 WL 180577, at *1. Similarly, the fee applicants in *Heliflight* practiced at a firm with fewer than 20 attorneys, and the court analyzed only the prevailing billing rate in Fort Worth, not Dallas. *Heliflight, Inc.*, 2007 WL 4373259, at *1; *see also Old Republican Ins. Co.*, 2005 WL 2026853, at *3. *Giddy Up, LLC v. Prism Graphics, Inc.* is also not determinative. The Court has no basis to conclude that the applicant in *Giddy Up* and Plaintiffs' counsel are comparably situated.

A fourth case cited by Defendant, *Cartier International B.V. v. Gorski*, is also unhelpful in determining the prevailing market rate here. No. 3:01-CV-01948-PCD, 2003 WL 25739624 (D. Conn. Apr. 30, 2003). In *Gorski*, the District Court of Connecticut considered a reasonable hourly rate for counsel representing a client on a "routine trademark infringement case." *Gorski*, 2003 WL 25739624, at *2. Because counsel did not substantiate the hourly rates requested, the

court relied on its knowledge of the rates charged in the district and, accordingly, reduced counsel's hourly rate from $500 to $225. However, *Gorski* is not determinative of the prevailing rate here for three reasons. First, *Gorski* analyzed the prevailing hourly rates in New Haven, Connecticut, not Dallas, Texas. Courts in this district analyzing the reasonableness of attorney's fees look to Dallas as the relevant market for comparison. *See Old Republican Ins. Co.*, 2005 WL 2026853, at *2; *Hawkins v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 3-96-CV-3219-R, 1998 WL 74259, at *1 (N.D. Tex. Feb. 13, 1998) (Buchmeyer, J.). Second, in *Gorski*, the court determined the prevailing market rate based on its own knowledge and experience, without the benefit of market data. Here, however, Plaintiff submitted billing surveys in support of its fee request. Third, *Gorski* did not describe the size and reputation of the applicant's firm and, therefore, this Court has no basis to conclude that the experience, sophistication, and reputation of the counsel in *Gorski* were comparable to those of Plaintiff's counsel. *See Old Republican Ins. Co.*, 2005 WL 2026853. Finding that *Richardson*, *Heliflight*, *Giddy Up*, and *Gorski* do not involve analogous facts and are in no sense determinative, the Court disagrees with Defendant's argument that it should reduce counsels' hourly rates based on those authorities.

Defendant also argues that the complexity of the case does not justify counsels' hourly rates. The Court disagrees. Defendant has not introduced evidence of a reasonable alternate hourly rate for counsel handling a routine trademark infringement suit. As analyzed earlier, *Richardson*, *Heliflight*, *Giddy Up*, and *Gorski* are not determinative of such a rate, since each is factually distinguishable from this case.

Defendant's final contention is that counsels' billing rates grew unreasonably quickly between 2007 and 2008, rising faster than the annual cost-of-living adjustment. An hourly rate consistent with the prevailing market rate can be reasonable, regardless of how quickly an

applicant's rates grew from the previous year. Thus, the observed growth in counsels' rates between 2007 and 2008 in and of itself does not warrant reducing counsels' submitted rates.

Having considered the arguments and evidence, the Court accepts as reasonable Ms. Clements, Mr. Phipps, and Mr. Fuller's hourly rates in 2007 and 2008.

2. Reasonable number of hours

*(a) Hours expended on non-reimbursable items*

In its Opinion of April 22, 2008, the Court awarded Plaintiff its reasonable attorney's fees incurred in enforcing the Injunction. The parties dispute whether certain time spent by counsel relates to enforcement of the Injunction.

First, Defendant argues that hours expended by counsel on Plaintiff's Response to Defendant's Motion for Damages are not recoverable, because the Motion for Damages was not related to enforcement of the Injunction. In its Motion for Damages, Defendant argued that a "Notice and Cure" provision in the parties' settlement agreement barred Plaintiff from filing a motion for contempt without notifying, and providing Defendant an opportunity to cure, violations of the Injunction. Legal services "advanc[ing] both a recoverable and a non-recoverable claim" are reimbursable. *Heliflight*, 2007 WL 4373259, at *5. In its Response, Plaintiff argued that it complied with the "Notice and Cure" provision and that, in any event, a violation of the provision, which was not incorporated into the Injunction, did not preclude enforcement of the Injunction. Because these arguments advanced Plaintiff's action for contempt, the Court concludes that hours spent by counsel on the Response are recoverable.

Defendant next contends that the thirty six hours billed by Ms. Clements on the case are not recoverable. Defendant relies on an exchange at the hearing of February 1, 2008. There, the Court inquired whether Ms. Clements was charging for her time on the case. Ms. Clements

responded, "there may be a small amount of entries that I'm just not sure about, but for the most part, I'm not charging my time." Ms. Clements referred the Court to Exhibit 53, a billing invoice from Locke Lord. The Court observed that "Exhibit 53, page 3, [shows] 21 hours for Ms. Clements." Ms. Clements never represented that she would exclude those hours, or hours billed on the matter after November 30, 2007, the date of the invoice. Ms. Clements' statements to the Court do not preclude reimbursement for hours reasonably expended by her on this matter.

Defendant's final contention is that time spent by Plaintiff's counsel monitoring Defendant's website, prior to the phase-out deadline, is not reimbursable. Between March 6, 2007 and June 21, 2007, Plaintiff devoted 8.5 hours identifying and corresponding with Defendant about references to MIRACLE GREENS on Defendant's website. An award of attorney's fees for contempt is only appropriate to compensate a party for injuries resulting from its adversary's non-compliance with a court decree. Here, the Court concluded that Defendant did not violate the Injunction by referring to MIRACLE GREENS on its website, prior to July 28, 2007. Because counsels' efforts between March 6, 2007 and June 21, 2007 were undertaken in response to activities by Defendant that were permissible, those efforts are not reimbursable. Accordingly, the 8.5 hours spent by Plaintiff's counsel monitoring Defendant's website are excluded from reimbursement.[3]

*(b) Hours expended on unsuccessful claims*

Defendant next seeks to exclude time spent by Plaintiff on its unsuccessful Motion to Quash the Subpoena of Dee Simmons. The Court agrees that this time should be excluded.

The billing entries detailing counsels' work on the Motion to Quash also include time spent on other items, making it impossible for the Court to determine the precise number of

---
[3] During this period, Mr. Fuller and Mr. Phipps devoted 3.5 and 5 hours, respectively, to reviewing and corresponding with Defendant about MIRACLE GREENS references on its website.

hours spent on that Motion. For example, one entry states, "Edit and file Motion to Quash; correspondence with opposing counsel re discovery issues; prepare and produce documents; correspondence with Threshold re document production." Plaintiff bears the burden of establishing by sufficient evidence the hours expended on each item. Because counsels' entries do not segregate the time spent on the Motion to Quash, the Court assumes that all of the hours provided in the billing entries relating to the Motion to Quash were spent on that activity. *See Roscoe Ind. Sch. Dist.*, 119 F.3d at 1236; *see also Hopwood v. State of Texas*, 999 F.Supp. 872, 916 n.93 (W.D.Tex. 1998), *rev'd on other grounds* 236 F.3d 256 (5th Cir. 2000). Accordingly, twenty hours of time spent by counsel are not recoverable.[4]

*(c) Excessive, duplicative, unspecified entries and failure to demonstrate billing judgment*

Only hours reasonably spent by counsel are reimbursable. *Hensley*, 461 U.S. at 434. The fee applicant has the burden to submit adequate documentation of the hours reasonably expended. *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997). Defendant argues that several billing entries are vague, duplicative, and reflect an excessive expenditure of time on the particular matters.

**Vague entries**

To enable meaningful review by the Court, a billing entry should contain a short but thorough description of the services rendered. *Roscoe Indep. Sch. Dist.*, 119 F.3d at 1236. An example of an entry determined to be too vague to inform the Court precisely what work was done is a "review of materials." Defendant claims many entries lack adequate detail. The Court concludes that Plaintiff's billing entries contain sufficient specificity to enable the Court to

---

[4]These entries indicate that Mr. Fuller and Mr. Phipps spent 16 hours and 4 hours, respectively, on the Motion to Quash.

evaluate whether counsels' expenditure of time on the particular matter was reasonable. Defendant's vagueness objection is thus overruled.

### Excessive hours

Defendant's next contention is that counsel spent an excessive amount of time on the following items: (i) Motion to Show Cause (20.75 hours); (ii) Reply to Motion to Show Cause (27.25 hours); (iii) Response to Defendant's Motion for Damages (9.75 hours); (iv) contempt hearing held on October 26, 2007 (22.75 hours); and (v) responses to Defendant's discovery requests (26.25 hours). The Court is of the view that the total time spent on such activities should be reduced by ten hours of Ms. Clements' time, thirty four and a quarter hours of Mr. Fuller's time, and eleven hours of Mr. Phipps' time for duplication, some inefficiency, and some apparently erroneous billing for preparation for hearings.

### (d) Lodestar

After consideration of Defendant's objections and making an appropriate reduction to the requested hours as reflected in the preceding paragraph and in footnotes 3 and 4, the Court finds that a reasonable number of hours times a reasonable hourly rate yields a lodestar of **$94,053**, as calculated below.

|  | Jerry K. Clements | Charles E. Phipps | M. Scott Fuller | Total Amount ($) |
|---|---|---|---|---|
| Requested Hours (2007) | 21 | 57.25 | 157.5 | — |
| Adjusted Hours (2007) | 18 | 41.25 | 119.75 | — |
| Requested Hours (2008) | 15 | 28 | 60.5 | — |
| Adjusted Hours (2008) | 8 | 24 | 44.5 | — |
| Amount ($) | 14,720 | 28,500 | 50,832.5 | **94,053** |

### C. Adjustment to lodestar calculation

The Court next considers whether the lodestar calculation should be adjusted in light of the four principal *Johnson* factors: (1) the time and labor involved; (2) the customary fee; (3) the

amount involved and the results obtained; and (4) the experience, reputation, and ability of counsel. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). Defendant argues that the third factor—Plaintiff's limited success—warrants a downward adjustment. There is no precise rule or formula for making an attorney's fee determination. *Hensley*, 461 U.S. at 436. Because the trial judge is in the best position to grasp the scope and complexity of the litigation, a district court has broad discretion to determine reasonable attorney's fees. *Id*. at 436-37; *see also Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 379 (5th Cir. 1990).

In assessing a party's degree of success, the Court focuses on two key factors: whether counsels' expenditure of time was justified in light of the relief obtained, and the relationship between the relief sought and the relief obtained. *See Hensley*, 461 U.S. at 436; *Migis*, 135 F.3d at 1041. The first factor, which focuses on the relationship between the relief obtained and the number of hours billed, addresses whether counsels' expenditure of time was reasonable in light of the results achieved. *Hensley*, 461 U.S. at 436. Here, counsels' expenditure of time on the contempt action was more than justified in light of the results achieved. The Injunction required Defendant and its affiliates to phase out all use of the MIRACLE GREENS mark by July 28, 2007. Plaintiff asserted multiple violations of the phase-out requirement, but only prevailed on two of its claims: (1) that an advertisement published in a single issue of *Threshold Magazine* contained an improper reference to MIRACLE GREENS; and (2) that the phrase, "formerly MIRACLE GREENS," appeared on a single page of Defendant's website. Significantly, Plaintiff failed to prove that it suffered economic losses from these violations. Similarly, Plaintiff did not prove that Defendant's failure adequately to apprise its affiliates of the Injunction adversely impacted Plaintiff.

The second factor—the relationship between the relief sought and the relief obtained—also supports a reduction of the fee award. The Supreme Court explained in *Hensley*, "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. *Id*. at 440. Here, Plaintiff prevailed only on a part of its asserted claims, and the relief obtained by Plaintiff was much more limited than the relief that which it sought.

In assessing the extent of a party's success, the relationship between the damages sought and the damages obtained is also relevant. *Migis*, 135 F.3d at 1048. Here, Plaintiff sought further injunctive relief, lost profits, treble damages, attorney's fees, and costs. The Court awarded Plaintiff reasonable attorney's fees and costs, but denied all other relief requested. Having achieved limited success, Plaintiff is not entitled to an award of all its fees.

The Court is of the view that a thirty five percent reduction in the lodestar calculation is appropriate to reflect Plaintiff's partial success on its Motion to Show Cause. Thus, the Court finds that **$61,135** represents a reasonable amount of attorney's fees here.

## CONCLUSION

Plaintiff is entitled to reimbursement of **$61,135** in reasonable attorney's fees, and **$1,407.72** in court costs.

**SO ORDERED**.

August 29, 2008.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**